## WHEELER v. WALTON & WHANN CO. (DAVIS PYRITES CO., Intervener).

(Circuit Court, D. Delaware. December 1, 1894.)

1. CONTRACT—SALE—CONDITION PRECEDENT.

The W. Co. made a contract with the D. Co. for the purchase of "the sulphur contents" of a quantity of pyrites. By the terms of the contract, the cinder, remaining after the burning of the ore by the W. Co., was to remain the property of the D. Co., and was to be kept for it, and removed by it, from time to time. After the delivery to the W. Co. of a quantity of ore, that company was placed in the hands of receivers, who conducted its business for a short time for the purpose of working up material on hand. When the receivers closed the works of the W. Co., a quantity of unburned ore remained in their hands, which they claimed the right to sell as part of the assets of the W. Co. *Held*, upon petition of the D. Co. for delivery of such ore to it by the receivers, that, such contract not being an ordinary contract of sale, where nothing remained to be done but to pay the price, but the vendee, before it became entitled to any part of the ore, being obliged to perform conditions

which neither it nor the receivers could perform, the ore did not become part of the assets of the W. Co. in the receivers' hands, and should be returned to the D. Co.

2. SAME—ASSIGNABILITY.

The contract containing no express words permitting its assignment, but containing stipulations as to dealings of both parties with the ore and its resulting products, after its first delivery to the vendee, which excluded the idea that an assignment by the vendee was contemplated by the parties, *held*, that the contract was not assignable.

This was a petition by the Davis Pyrites Company for an order directing the receivers of the Walton & Whann Company to deliver to the petitioner a quantity of Small's pyrites.

Wm. C. Spruance and Arthur W. Spruance, for petitioner.

Bradford & Vandegrift, for receivers

WALES, District Judge. This is an application for an order on the receivers of the Walton & Whann Company to deliver to the petitioner 1,300 tons of Small's pyrites, which came into the possession of the company in the manner hereinafter stated. The Walton & Whann Company had been for many years prior to the 6th day of June, 1894, large manufacturers of fertilizers. On that day the company was proved to be insolvent, and its property and effects passed into the hands of receivers appointed by this court. The receivers, under the direction of the court, continued the business of the company for the purpose of compounding and working up the materials they found on hand, and by selling the manufactured product, until the 1st day of September, 1894, when the works were shut down. The petition sets out in full a contract made between the petitioner and the Walton & Whann Company, dated January 31, 1894, whereby the petitioner agreed to sell, and the Walton & Whann Company agreed to buy, "the sulphur contents in about five thousand tons" of Small's pyrites. After stipulating the price to be paid per ton, the place of delivery, and the terms of payment, the contract provided further:

"The cinder from the above ore after burning to be the property of sellers, and to be stored by buyers free of cost until sent for. The cinder to be kept separate and apart from other cinder, and free from dirt and contamination with any other material, and to be stored in a readily accessible place. Accumulation not to exceed at any one time about 2,000 tons. And it is hereby understood and agreed that the sellers or their representatives shall always have access to the place where the ore and cinder are stored. Buyers agree to load cinder f. o. b. cars or boat for shipment, at a cost of not exceeding 17½c. per ton."

Pursuant to the contract, the petitioner, prior to the 1st day of May, 1894, had delivered to the Walton & Whann Company 305 tons of ore, all of which has been burned, and the sulphur contents thereof were paid for by the Walton & Whann Company, and the cinder thereof returned to the petitioner by the receivers. After the delivery and reduction of the first lot of ore, as just mentioned, and before the appointment of the receivers, the petitioner delivered additional quantities of ore, amounting to 2,339 tons, of which about 1,039 tons were burned by the Walton & Whann Company and the receivers; and there now remain, in the possession of the

receivers, at the works of the company, about 1,300 tons of unburned ore. The cinder of the 1,039 tons of the ore which were burned by the company and its receivers has been delivered to the petitioners. The receivers claim the unburned ore now in their possession as a part of the assets of the company, and they admit that they do not intend to use any portion of the ore or to extract the sulphur therefrom, and also that they propose to sell the ore in its present condition for the benefit of the general creditors of the company.

Of the several questions which were discussed by counsel at the hearing, it is unnecessary to consider more than one. The contract of January 31, 1894, was an executory one, and is not assignable to a third party. "The sulphur contents" of the ore, and not the ore, were sold to the Walton & Whann Company, and the receivers hold possession of the ore on the same terms and conditions on which it was delivered to the company. One of the conditions of the sale was cash, or what was equivalent to it, on delivery; but this condition appears to have been waived by the petitioner after one or two deliveries, and the insistence of the respondents' counsel is that, as the sale and delivery of the unpaid-for ore were on credit, the petitioner stands in the same relation to the insolvent company as any other unsecured creditor, and has no right to reclaim the ore. But, as has been already indicated, this was not the ordinary case of goods sold and delivered, and where nothing remained to be done but the payment of the price. Here certain conditions were made a part of the contract, which were obligatory on the vendee to perform before the contract could be executed, and which have not been performed by the Walton & Whann Company or by its receivers. As to the 1,300 tons of ore now remaining in the hands of the receivers the contract is still executory. The receivers claim the right to dispose of this property without complying with the conditions of sale, and it is not a sufficient answer to the demand of the petitioner, that, in case the ore is sold, the petitioner can have a remedy by an action for breach of contract. Such an action against an insolvent concern would be productive of a very small percentage of the value of the ore. The present application is made to reclaim the possession of property which belonged to the vendor, and the right to which has been forfeited by the vendee in consequence of its failure and inability to fulfill its contract. Even admitting that the Walton & Whann Company had a good title to "the sulphur contents," they clearly had no title to the cinder. The two things are inseparable until the ore has been subjected to the process of burning, and the vendee and the receivers are no longer able to apply that process. The vender sold one part or ingredient of the ore, and reserved the other. The receivers cannot complete the title of Walton & Whann Company to "the sulphur contents" until the latter have been extracted from the ore, and reduced to possession; and this the receivers do not propose to do, but intend to sell the raw material without regard to the rights of the petitioner. Moreover, this contract is not an assignable one. It contains no express words permitting the vendee to assign, and nothing can be inferred from it which would imply that an assignment was con-

templated by either of the parties. The ore was to be delivered at a designated place, and the vendors or their representatives were to have free access to the place where the ore and cinder were stored. These and other conditions named in the contract exclude all idea of any intention of the parties that the vendee would be at liberty to transfer the contract to a third party. The sale of the ore was not an absolute one. The petitioner fulfilled its part of the contract up to the time of the insolvency of the Walton & Whann Company, when it was released from further deliveries of the ore. The ore in its present condition does not constitute a part of the assets of the Walton & Whann Company. The petitioner is out of possession, but it cannot be said to have parted with its title to the property. If the receivers can neither reduce nor sell the ore, no other or juster disposition can be made of it than by its delivery to the petitioner. It could be of no possible benefit to the general creditors to let the ore remain in the possession of the receivers as it now is; and, on the other hand, they would lose nothing by its being returned to the petitioner.

The mode of procedure which has been adopted by the petitioner is a proper one. Where property or funds are in the hands of a receiver, and claimed by persons not parties to the action in which he was appointed, a petition or motion may be presented to the court for an order on the receiver to deliver over the fund or property to the claimant. High, Rec. § 39. If authority is needed to sustain the position that this contract is nonassignable, it may be found in Arkansas Val. Smelting Co. v. Belden Min. Co., 127 U. S. 387, 8 Sup. Ct. 1308, and the cases there cited. In the principal case, Mr. Justice Gray, speaking for the court, said:

"At the present day, no doubt, an agreement to pay money or to deliver goods may be assigned by the person to whom the money is to be paid or the goods are to be delivered, if there is nothing in the terms of the contract, whether by requiring something to be afterwards done by him or by some other stipulation, which manifests the intention of the parties that it shall not be assignable. But every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent."

See, also, Benj. Sales, § 59; Robson v. Drummond, 2 Barn. & Adol. 303; Bauendahl v. Horr, 7 Blatchf. 548, Fed. Cas. No. 1,113.

An order will be made in accordance with the prayer of the petition.