**MONARCH ANTHRACITE MINING CO.
v. COFFIN et al.
No. 6609.**

Circuit Court of Appeals, Third Circuit.
Feb. 16, 1939.

338

Robert T. McCracken, of Philadelphia, Pa., and Walter L. Hill, of Scranton, Pa., for appellant.

Wm. A. Schnader, of Philadelphia, Pa., Lee P. Stark and J. Julius Levy, both of Scranton, Pa., and Schnader & Lewis, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and DAVIS, Circuit Judges, and DICKINSON, District Judge.

DICKINSON, District Judge.

The bill of complaint with which this appeal is concerned has required nineteen printed pages to set forth and has fourteen prayers for relief. This gives it the appearance of great complexity. Stripped of all extraneous averments, coloring matter, evidentiary statements and arguments, the cause of complaint is a very simple one.

The plaintiffs are creditors of the Scranton Coal Company, an otherwise hopelessly insolvent debtor. The main averment of the bill is that the defendants, through their control of the Scranton Company, have so manipulated its affairs that its property and assets have been wrongfully diverted to the defendants. Among the properties which rightfully belong to it is a mining operation known to this record as the Diamond Collieries. This mine belongs to the Glen Alden Coal Company, one of the defendants. Large sums of money were expended in the development and equipment of this mine, the whole expense of which was charged to and borne by the Scranton Company. The mine, however, was wrongfully leased to the Monarch Anthracite Company, another of the defendants, which operated it, receiving all the profits which through it were diverted to the defendants. One of the objectives of the bill is to have this mine found to be the property of the Scranton Company, to have the Monarch Company enjoined to yield it up and the defendants to restore to the Scranton Company the profits thus wrongfully diverted. The means by which the assets and property of the Scranton Company were thus wrongfully diverted to the defendants are too complicated and devious to be stated otherwise than in the result. That result is that the defendants have wrongfully received $1,500,000 in value of the assets and property of the Scranton Company which they should be required to restore to it. If the averments made are true, the plaintiffs undoubtedly have a just cause of complaint against the defendants. This takes us to the legal remedy to redress the wrongs done to the plaintiffs.

The Scranton Coal Company filed a petition under the provisions of section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. No trustee was appointed, but the debtor was left in possession. The plaintiffs filed their bill in a court of the United States. It will be noted that there is no averment of diversity of citizenship; no averment of the insolvency of the defendants or that they are unable to respond to any decree or judgment which may be entered against them, nor any averment that the Diamond Colliery is being wasted or improperly operated. The bill was filed against five defendants. One, the Dickson & Eddy partnership, was not served and hence drops out of the case. We are unable to find that any relief is prayed of the Glen Alden Coal Company. It has, however, been required to answer. It is thus a nominal party under Equity Rule 40, 28 U.S.C.A. following section 723. It has developed that the Ontario & Western Railroad Company, another of the defendants, is still in the hands of the District Court for the Western District of New York and immune from adverse proceedings against it by a restraining order of that court. The motion of

that defendant has not been finally determined in this proceeding. It was determined for the time being by an order giving the plaintiffs the opportunity to apply to the District Court of Western New York for leave to sue. This leaves in the case the Monarch Anthracite Coal Company and James H. Pierce, to whom the order made by the Court below was directed.

■ The bill was filed as a class bill under Equity Rule 38, 28 U.S.C.A. following section 723. It is well settled that an injured party may bring a bill to redress the injury complained of, either in his own name or as a class bill under Rule 38, when the corporation, in which is the right of action, refuses to act. Equity Rule 27, 28 U.S.C.A. following section 723, regulates this in cases of stockholders, but we have no rule regulating creditors' bills. Rule 23 of the New Rules of Procedure, 28 U.S.C.A. following section 723c, gives recognition to the right. The bill was met by a challenge of the jurisdiction of the court. The question was raised by a motion to quash the writ of subpoena and to strike the return of service. Jurisdiction is of several kinds. One is jurisdiction of the subject matter. This goes broadly to the judicial power of the court to determine the cause as one, for illustration, cognizable in equity. Another is jurisdiction of the person of the defendant. This means is he properly before the court and subject to its jurisdiction? Jurisdiction in this sense is obtained by service of the process of the court. It is determined by the return. The question is raised by a motion to strike. A third kind of jurisdiction is venue jurisdiction. This raises the question of the judicial power of the particular court to determine the cause. This is the question here raised. It may be raised by the motion or the court may raise it. This bill, as has been said, was brought in a court of the United States. Has that court the judicial power to determine it?

■ The judicial power of the courts of the United States is defined in the Judiciary Article of the Constitution. U.S.C.A. Const. art. 3. They possess the power in what we know as diversity of citizenship cases. There is here no diversity of citizenship averred. It has been settled for us, however, that Congress may enlarge or restrict the judicial power of the United States Courts. It is in consequence admitted that the court has no jurisdiction in this case unless it is conferred because of the pending proceeding in the Scranton

Coal Company case, and that if the bill had been filed by a trustee appointed in that proceeding the court would have jurisdiction. In view of this, we see no need to pass upon the question. The bill as filed is open to amendment if thought necessary. The court below upheld the jurisdiction of the court on the authority of Lowenstein v. Reikes, 2 Cir., 54 F.2d 481. The distinction must be kept in mind between a court of bankruptcy acting as such and a District Court sitting as a court of equity. The cited case raised the question of the right of appeal and was ruled upon this distinction. Putting to one side the technical distinction between a bill filed by a trustee in bankruptcy and one filed by creditors, the substantial question is one determined by the nature of the bill. The court below, however, did more than uphold the jurisdictional power of the court. It, on the mere presentation of the bill and its averments, took out of the hands and control of the Monarch Company one of the mines leased to and operated by it. In this we think the court committed error. In so doing the court treated the bill as the ordinary receivership bill. It did not, it is true, appoint a receiver for the Monarch Company for all its possessions, but it did for a substantial part of them. If the bill is viewed as the ordinary receivership bill, the court was without the lawful power to appoint a receiver and, if viewed as a reclamation bill, the appointment of a receiver on the mere averments of the bill was in error. The order and decree of the court below should be reversed. We hold to these propositions:

■ 1. The court below, as a court of equity, had no jurisdictional power to appoint a receiver for the Monarch Company without its consent or its waiver of the want of jurisdiction. Pusey and Jones case, Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763.

■ 2. The court below, under all the circumstances of the case, was not justified in appointing a receiver for the Monarch Company or for any mine leased and operated by it, the company being solvent and able to meet any liability decreed against it and no waste or improper operation of the mine being proved or charged.

■ 3. There being no averment of the insolvency of the defendants or other exigency calling for the appointment of a receiver, the appointment, in advance of a finding of the truth of the averments of the

bill after trial upon final hearing, was unjustified and error.

The order and decree appealed from is reversed with costs to the appellant and the cause is remitted to the court below with a procedendo.